IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| 3 FORM, INC., <br><br> Plaintiff, <br><br><br> vs. <br><br><br> LUMICOR, INC., <br> Defendant. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS <br><br><br><br><br> Case No. 2:09-CV-990 TS |

I. INTRODUCTION

This matter is before the Court on the following five motions: Defendant and Counter-Claimant Lumicor, Inc.'s ("Lumicor" or "Defendant") 1) Motion for Partial Dismissal and 2) Motion for Summary Judgment and Plaintiff and Counter-Defendant 3form, Inc.'s ("3form" or "Plaintiff") 3) Motion for Leave to File a Surreply Memorandum in Further Opposition to Lumicor's Motion for Partial Dismissal, 4) Motion for Leave to File Evidence of New Transactions in Opposition to Lumicor's Motion for Partial Dismissal, and 5) Motion for Extension of Time to Complete Expert Discovery.

II. MOTION FOR PARTIAL DISMISSAL

A.   BACKGROUND

Defendant Lumicor argues in its Motion for Partial Dismissal that an agreement between 3form and Eastman Chemical Company ("Eastman") granted such sweeping rights to Eastman

1

that 3form now lacks standing to bring suit for the infringement of certain patents.[1]  Although the agreement was purportedly an exclusive license agreement, Lumicor argues that, due to the number of rights granted and the minimal number of rights retained, the agreement constituted an assignment of ownership of the patents to Eastman.

B.     STANDARD OF REVIEW

"Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue."[2]  "[I]n a patent infringement action, 'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit.'"[3]  If a plaintiff lacked Article III standing when suit was filed, the suit must be dismissed.[4]

"It is well settled that '[w]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.'"[5]  If a party is merely a licensee, rather than the patent owner,

> suit must be brought in [in the name of the owner of the patent] and never in the name of the licensee alone . . . .  Any rights of the licensee must be enforced through or in the name of the owner of the patent, and perhaps, if necessary to protect the rights of all parties, joining the licensee with him as a plaintiff.[6]

---

[1] Docket No. 58, at 3.

[2] *Abraxis Bioscience Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[3] *Id.* (quoting *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-310 (Fed. Cir. 2003)).

[4] *Id.*

[5] *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1995) (alteration in original) (quoting *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) (alteration in original)).

[6] *Waterman*, 138 U.S. at 255.

As explained in *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*[7]:

> A patent is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or part. Thus, although all the various rights available under the patent are initially held by the named inventor or inventors, they may, as a result of licensing agreements and assignments, become separated and be held by multiple individuals. When a sufficiently large portion of this bundle of rights is held by one individual, we refer to that individual as the owner of the patent, and that individual is permitted to sue for infringement in his own name. When a plaintiff lacking a sufficiently large portion of rights brings suit, that plaintiff does not have standing to sue on his own, and the suit must be dismissed, or additional holders of rights under the patent must be joined as parties to the suit, as appropriate given the plaintiff's status as either an exclusive or a nonexclusive licensee.[8]

"To determine whether an exclusive license is tantamount to an assignment, we must ascertain the intention of the parties [to the license agreement] and examine the substance of what was granted."[9] Although an exhaustive list of rights required to render an exclusive licensee the owner of a patent has not been set forth, the Federal Circuit has listed some of the rights that should be examined:

> Of course, transfer of the exclusive right to make, use, and sell products or services under the patent is vitally important to an assignment. We have also examined the scope of the licensee's right to sublicense, the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement, the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee, the duration of the license rights granted to the licensee, the ability of the licensor to supervise and control the licensee's activities, the obligation of the licensor to continue paying patent maintenance fees, and the nature of any limits on the licensee's right to assign its interests in the patent. Frequently, though, the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration. Where the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the

---

[7] *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010).

[8] *Id.* at 1360.

[9] *Id.* at 1358 (quotation omitted) (alteration in original).

licensee. It does not, however, preclude such a finding if the licensor's right to sue is rendered illusory by the licensee's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers. Under the prior decisions of this court, the nature and scope of the licensor's retained right to sue accused infringers is the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner of the patent.[10]

C.  ANALYSIS

1.  PATENTS AT ISSUE

On July 17, 2011, Defendant Lumicor filed a Motion for Partial Dismissal.[11] In its Motion, Lumicor argues that 3form does not own the rights to the patents asserted in claims 1 through 10 of 3form's Second Amended Complaint[12] and that those claims should therefore be dismissed for lack of standing.[13] Although Lumicor alleges in its Motion for Partial Dismissal that 3form does not have standing to bring suit under ten patents, it has only provided adequate support for challenging Patent Nos. 7,008,700 ("the '700 patent"), 7,505,057 ("the '057 patent"), and D621,068 ("the '068 patent")—patents that were the subject of a license agreement between 3form and Eastman.

With respect to the other patents, Lumicor has cited no language conveying any interest in US Patent Nos. 7,660,750, ("the '750 patent") 7,691,486 ("the '486 patent"), 7,776,412 ("the '412 patent"), and 7,691,470 ("the '470 patent") to any other party. Furthermore, with respect to Patent Nos. D609,826 ("the '826 patent"), D620,620 ("the '620 patent"), and D617,473 ("the

---

[10] *Id.* at 1360-61 (citations omitted).

[11] Docket No. 55.

[12] Although Plaintiff's Second Amended Complaint has not been filed with the Court, *see* Docket Nos. 29-31, the Court did grant Plaintiff's Motion to file the Complaint. The Court will therefore refer to Plaintiff's Second Amended Complaint, as proposed at Docket No. 27 Ex 1.

[13] Docket No. 58, at 2.

'473 patent"), Lumicor alleges that they are "based on" the '700 patent, and were therefore conveyed in the 2008 Agreement. However, the patents do not claim priority to the '700 patent and two of the four inventors listed on the '826, '620, and '473 patents differ from the inventors listed on the '700 patent.[14] Lumicor has provided no other basis for finding that these patents are based on the '700 patent, therefore, the Court will deny Lumicor's Motion to Dismiss with respect to the '826, '620, '473, '750, '486, '412, and '470 patents.

    2.    THE 2008 AGREEMENT

Lumicor argues that the October 28, 2008, document titled "Exclusive Patent License Agreement"[15] ("the 2008 Agreement") between 3form and Eastman granted such sweeping rights to Eastman that "3form retained no rights under the patent at all."[16] It is undisputed that 3form conveyed at least a significant part of the bundle of rights of the '700, '057, and '068 patents (the "Licensed 3form Patents") to Eastman. The question before the Court is whether this assignment transferred sufficient rights to constitute an assignment and make Eastman the owner of the patents.

The 2008 Agreement granted Eastman "a worldwide, perpetual, fully paid-up, exclusive license" to the Licensed 3form Patents, with rights "to make, have made, use, import, offer to sell and sell Licensed Products" and "the right to grant sub-licenses under LICENSED 3FORM PATENTS."[17] Eastman was also empowered:

---

[14] *Compare* Docket No. 66 Ex. 1-3 *with* Docket No. 66 Ex. 6.

[15] Docket No. 59 Ex. 1.

[16] Docket No. 58, at 3.

[17] Docket No. 59 Ex. 1, at 2-3.

> A. To bring suit in EASTMAN's own name, or if required by law, jointly with 3FORM, at its own expense and on its own behalf, for infringement of the LICENSED 3FORM PATENTS;
>
> B. In any such suit, to enjoin infringement and to collect for its use, damages (including all past damages), profits, and awards of whatever nature recoverable for such infringement; and
>
> C. To settle any claim or suit for infringement of the LICENSED 3FORM PATENTS by granting the infringing party a sublicense under the provisions of Article 2 of this Agreement.[18]

The agreement also stated that 1) Eastman granted back to 3form the rights to practice the Licensed 3form Patents[19] and 2) 3form had an obligation to maintain the Licensed 3form Patents. No other rights were expressly retained by 3form.[20]

As previously noted, when setting forth the factors to consider for ownership the Federal Circuit stated "Frequently, though, the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is the most important consideration."[21] The 2008 Agreement clearly gave Eastman the right to bring suit and did not require the approval of or give a right of first refusal to 3form to bring such actions. It also gave Eastman the ability "[t]o settle *any* claim or suit for infringement of the LICENSED 3FORM PATENTS."[22] However, the 2008 Agreement was silent as to *3form's* right to sue, saying nothing about whether it was being given up or retained.

In the usual case, whether 3form retained the right to sue could be determinative, because, as the Federal Circuit has stated: "Where the licensor retains a right to sue accused

---

[18] *Id.* at 3.

[19] *Id.*

[20] *Id.*

[21] *Alfred E. Mann Found.*, 604 F.3d at 1361.

[22] Docket No. 59 Ex. 1, at 3 (emphasis added).

infringers, that right often precludes a finding that all substantial rights were transferred to the licensee."[23] However, whether 3form retained a right to sue under the patent is not relevant to the case at hand, as the retention of a right to sue accused infringers "does not, however, preclude [a finding that all substantial rights were transferred to the licensee] if the licensor's right to sue is rendered illusory by the licensee's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers."[24]

From the plain language of the 2008 Agreement, any right to sue that 3form may have retained was rendered illusory by Eastman's ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the accused infringers. Therefore, the Court holds that the 2008 Agreement was an assignment that transferred ownership to Eastman, stripping 3form of Article III standing to bring suit individually for violation of the '700, '057, and '068 patents.

    3.    THE 2009 CONVERSATION

3form alleges that an oral agreement in October, 2009, ("the 2009 Conversation") between 3form's Chief Financial Officer Wynn Clayton and Rick Plummer—"an account executive at Eastman who manages the relationship between 3form and Eastman" and "Eastman's designated liaison with 3form"—further modified the 2008 Agreement, curing any standing issues.[25] Knowing that Eastman had a right to sublicense some of the patents at issue to Lumicor, Mr. Clayton called Mr. Plummer before filing the present action to make sure that Eastman would not grant a sublicense to Lumicor once suit began.[26] Mr. Plummer called back

---

[23] *Alfred E. Mann Found.*, 604 F.3d at 1361.

[24] *Id.*

[25] Docket No. 69, at 3-4.

[26] *Id.*

"and told [Mr. Clayton] that Eastman would not sublicense Lumicor."[27] After Lumicor filed the instant Motion, Mr. Clayton called Mr. Plummer, who confirmed that he recalled the 2009 Conversation and "verified that he had confirmed to [Mr. Clayton] on that occasion that Eastman had no intention of sublicensing Lumicor."[28]

3form argues that the 2009 Conversation created "an oral and/or implied-in-fact agreement . . . wherein Eastman promised not to license Lumicor under the LICENSED 3FORM PATENTS in deference to a suit by 3form against Lumicor for infringement of those patents."[29] However, even accepting 3form's assertions as true, this conversation would be insufficient to transfer ownership of any of the patents *back* to 3form. Therefore, 3form was a mere non-exclusive licensee and does not have standing to bring suit under the Licensed 3form Patents.

4. ADDITIONAL MOTIONS

3form filed an Ex Parte Motion for Leave to File Evidence of New Transactions in Opposition to Lumicor, Inc.'s Motion for Partial Dismissal.[30] This evidence consists of exhibits showing that Hunter Douglas Industries Switzerland GmbH ("Hunter Douglas") "purchased all rights and benefits of Eastman in the October 2008 Agreement" and that Hunger Douglas then conveyed, effective November 21, 2011, "all of its right, title, and interest in the rights and benefits of the October 2008 Agreement to 3form."[31] However, as 3form lacked Article III

---

[27] *Id.* at 3.

[28] *Id.* at 4. 3form does concede that "Eastman has refused to acknowledge the October 2009 Conversation and instead maintains that the October 2008 Agreement has not been modified." Docket No. 68, at 8 n.8. However, this issue is immaterial to the Court's ultimate determination.

[29] Docket No. 68, at 8.

[30] Docket No. 128.

[31] *Id.* at 3 (internal quotation marks omitted).

standing at the time of filing suit and this defect cannot be cured through subsequent events,[32] this additional evidence is irrelevant. The Court will therefore deny this Motion as moot.

3form also filed an Ex Parte Motion for Leave to File a Surreply Memorandum in Further Opposition to Lumicor's Motion for Partial Dismissal.[33] While 3form's Proposed Surreply is in response to arguments first raised in Lumicor's Reply, the Court has considered the arguments raised and finds them irrelevant to the present analysis. The Court will therefore deny 3form's Motion for Leave to File as moot.

3form also filed an objection to the use of certain deposition testimony and an email as evidence in Lumicor's Reply, arguing that the evidence is inadmissible under Fed. R. Evid. 602 and 802.[34] 3form first argues that an email from Louis Moreno, a lawyer for Eastman Chemical Company, is inadmissible because it is hearsay and because "Lumicor has provided no evidence that Mr. Moreno has any 'personal knowledge' of the substance of the conversations [that are referred to in his email]."[35] 3form also objects to Lumicor's use of deposition testimony from Lucian Boldea, an Eastman representative, where Boldea testified regarding certain conversations. After reviewing these statements, the Court concludes that they are inadmissible under Fed. R. Evid. 602 and 802 and has excluded this evidence from the above analysis.

### III. MOTION FOR SUMMARY JUDGMENT

Lumicor has sought summary judgment on 3form's 1st through 7th and 9th through 14th Claims for Relief and on Lumicor's 1st through 3rd and 6th through 8th Counterclaims. The

---

[32] *See Abraxis*, 625 F.3d at 1364.

[33] Docket No. 96.

[34] Docket No. 95.

[35] *Id.* at 3.

patents implicated by these claims are the '700, '057, '750, '826, '620, '473, '068, '470, and '412 patents. These claims also deal with false marking, false advertising, trademark infringement, and unfair competition issues. The Court has already held that 3form lacked Article III standing to file suit under the '700, '057, and '068 patents, rendering Lumicor's Motion moot with respect to those patents. The Court will now consider this Motion with respect to the other claims.

A.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[36] The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact.[37] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[38] An issue is a "genuine issue for trial" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[39]

---

[36]*See* Fed. R. Civ. P. 56(a).

[37]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[38]*Sally Beauty Co., Inc., v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[39]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.  PATENT CLAIMS

1.  THE '750 PATENT

3form alleges that Lumicor's website infringes on the '750 patent, which is titled: "Viewing and ordering customized resin panels through web-based interfaces."[40] Lumicor moves for summary judgment, providing evidence that the website was not operational at any time after the '750 patent issued.[41] In response, 3form has provided a declaration stating that a Lumicor website was both operational and accessible after the issuance of the '750 patent, and that the website's functionality infringed the '750 patent.[42] Therefore, there is a disputed material fact and the Court will deny Lumicor's Motion for Summary Judgment for all claims relying on the '750 patent.

2.  THE WOOD VENEER DESIGN PATENTS

Lumicor also moves for summary judgment on 3form's Fourth, Sixth, and Seventh Claims and Lumicor's Third Counterclaim, arguing that the '826, '620, and '473 patents ("the Wood Veneer Design Patents") are invalid and that Lumicor did not infringe them.

"A patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."[43] An invalidity defense must be proven by clear and convincing evidence.[44] Lumicor argues that the Wood Veneer Design Patents are invalid. However, 3form has presented evidence contradicting many of

---

[40] Docket No. 27 Ex. 1, at 6.

[41] Docket No. 81, at 3.

[42] Docket No. 105, at 2-3.

[43] 35 U.S.C. § 282.

[44] *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).

Lumicor's assertions.[45] As there are a number of genuine issues of material fact and Lumicor has not met the burden on summary judgment of demonstrating invalidity by clear and convincing evidence, the Court will deny Lumicor's Motion for Summary Judgment with respect to all claims relying on the Wood Veneer Design Patents.

        3.      THE '470 PATENT

Lumicor next argues 1) that there is no evidence that Lumicor infringed the '470 patent, which is for panels made of polycarbonate resin, and 2) that the '470 patent is invalid.[46] The Court finds that there are genuine issues of material fact relating to infringement and that Lumicor has not met its burden on summary judgment of demonstrating invalidity by clear and convincing evidence. Therefore, the Court will deny Lumicor's Motion for Summary Judgment with respect to all claims relying on the '412 patent.

        4.      THE '412 PATENT

Lumicor argues in its Motion that 3form's claim is "without any supporting factual basis."[47] Lumicor also states that "[t]here is no evidence that Lumicor infringed the '412 patent at any time."[48] 3form responds by pointing out that "infringement is not limited to *making* or *selling* the patented invention, but also includes *offering to sell* the patented invention," and provides evidence that "Lumicor was advertising its Dimension Poured product on its website after August 18, 2010." However, 3form does not provide any evidence to support its claim that Lumicor's Dimension Poured actually infringes the '412 patent.

---

[45] Docket No. 110, at 16-21.

[46] Docket No. 80, at 26-29.

[47] Docket No. 80, at 29.

[48] *Id.*

Although 3form argued at the hearing that Lumicor had not raised the issue of insufficient evidence of infringement in its memorandum, the Court finds Lumicor's assertions that 3form's claim is "without any supporting factual basis" and that "[t]here is no evidence that Lumicor infringed the '412 patent at any time" sufficient to raise the issue. Therefore, as 3form has not provided any evidence supporting a claim of infringement, the Court will grant Lumicor's Motion for Summary Judgment against 3form and in favor of Lumicor for all claims relying on the '412 patent.

C.   CLAIMS THAT DO NOT RELY ON PATENTS

   1.   FALSE MARKING

Lumicor seeks summary judgment on 3form's Eleventh Claim for false marking. Lumicor argues that 3form has not produced evidence supporting a violation of 35 U.S.C. § 292.[49] The statute provides:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . Shall be fined not more than $500 for every such offense.[50]

While "[o]nly the United States may sue for the penalty authorized by this subsection," "[a] person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury."[51]

"The bar for proving deceptive intent [in a suit under § 292] is particularly high" and "a purpose of deceit, rather than simply knowledge that a statement is false, is

---

[49] Docket No. 80, at 29-30.

[50] 35 U.S.C. § 292(a).

[51] Id. § 292(b).

13

required."[52]  However, "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public."[53]

      3form's Second Amended Complaint argues that Lumicor's sole patent—the Schober '327 patent—required as a critical step that the press be opened and all pressure removed, a process referred to as "bumping the press."[54]  3form has cited to evidence that some individuals at Lumicor knew that it was not bumping the press, and argues that the products are therefore not made according to the patented process.[55]  Therefore, 3form argues, Lumicor's statements that they follow a patent process constitute false marking, as its products were not made in accordance with that process.[56]

      Lumicor argues that there is no evidence that anyone at Lumicor was aware that any of its patent markings were erroneous, and therefore 3form cannot demonstrate that the marking was done "for the purpose of deceiving the public," as required by the statute.[57]  Lumicor also argued at the hearing that 3form has not presented any evidence that the individual(s) responsible for marking were aware that Lumicor was not bumping the press or aware that a failure to bump meant that the products did not follow the patented process.

---

[52] *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed Cir. 2010).

[53] *Id.* at 1362-63.

[54] Docket No. 27 Ex. 1, at 16; *see also* Docket No. 108 Ex. 2, at 9 (Schober '327 patent describing bumping the press as "critical in order to allow the heated air, water vapor, and gases to escape from between the polymeric sheets . . . so that bubbles or voids are not entrapped in the matrix.")

[55] Docket No. 110, at 30-31.

[56] Docket No. 27 Ex. 1, at 15-17.

[57] Docket No. 80, at 30.

3form has not cited to evidence showing "knowledge that the statement was false" and therefore no rebuttable presumption of intent to deceive exists. As 3form has also not submitted evidence of a purpose of deceit, the Court finds that a reasonable jury could not return a verdict in 3form's favor on 3form's false marking claim. Furthermore, 3form has not provided any evidence of resulting competitive injury. While 3form has cited to a number of cases allowing the finder of fact to presume causation and injury for false *advertising* when two parties are in direct competition, none of these cases address false *marking*.[58] For these reasons, the Court will grant Lumicor's Motion for Summary Judgment against 3form and in favor of Lumicor on 3form's Eleventh Claim for Relief.

2. FALSE ADVERTISING

Lumicor seeks summary judgment on 3form's Twelfth Claim for false advertising. Section 43(a) of the Lanham act, codified as 15 U.S.C. § 1125(a), states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

This Court has held that in order to establish a claim under this section, a plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has

---

[58] *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000); *Castol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir. 1992).

been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of good will associated with its products.[59]

3form has provided evidence demonstrating that Lumicor does not follow each element of the Schober '327 patented process, and argues therefore that Lumicor could not properly claim in its advertisements that its products were patented under its own patent.[60] Although Lumicor licenses additional patents from Eastman, 3form alleges that those licensed patents cannot "immunize" Lumicor's statements, as they are also factually inaccurate.[61] However, the flaws pointed out by 3form are over small issues with the language in Lumicor's advertisements—namely 1) references to *Lumicor's* patented process or technology when the technology was patented by Eastman and licensed by Lumicor and 2) references to "a patented process" when the products may have only be protected under product claims (rather than process claims).[62] This deception is not material, as it would not be "likely to influence the purchasing decision."

However, 3form argues that the materiality and tendency to confuse of the statements need not be shown, as the language is false on its face. Other circuits have held that when a statement is "literally false as a factual matter . . . . the plaintiff need not show that the statement either actually deceived customers or was likely to do so."[63] However, the Tenth Circuit has not

---

[59] *Utah Med. Prods., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1308 (D. Utah 1999) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)).

[60] Docket No. 110, at 30-32.

[61] *Id.* at 31-32.

[62] *Id.* at 32.

[63] *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

endorsed this holding. Furthermore, as Lumicor licensed patents from Eastman, the products did benefit from patents that Lumicor had licensed, making any deception immaterial. For these reasons, the Court will grant Lumicor's Motion for Summary Judgment against 3form and in favor of Lumicor on 3form's Twelfth Claim for Relief.

      3.      TRADEMARK INFRINGEMENT / UNFAIR COMPETITION

Finally, Lumicor moves for summary judgment on 3form's Thirteenth and Fourteenth Claims. These claims allege that Lumicor is liable for trademark infringement or unfair competition by incorporating the term "3form" in the metatags on its website.[64] Both claims are brought under Section 43(a) of the Lanham Act.[65] While Lumicor acknowledges that "the term 3FORM was incorporated into its meta tags for a brief period of time," it argues that it was not visible to consumers, as it was in the source code behind the scenes, and therefore caused no likelihood of confusion.[66]

This Court held in *1-800 Contacts, Inc. v. Lens.com, Inc.*[67] that in order to establish a violation of section 43(a), a plaintiff must establish: "(1) [its] mark is valid and legally protectable; (2) it is the owner of the mark; (3) the defendant has used the mark to identify goods or services, and (4) such use is likely to create confusion concerning the origin of the goods or services."[68]

---

[64] Docket No. 27 Ex. A, at 18-21.

[65] *Id.*

[66] Docket No. 80, at 32-33.

[67] *1-800 Contacts, Inc. v. Lens.com, Inc.*, 755 F. Supp. 2d 1151 (D. Utah, 2010).

[68] *Id.* at 1169 (internal quotation marks omitted) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071 (10th Cir.2009)).

In *Australian Gold, Inc. v. Hatfield*,[69] the Tenth Circuit found that the defendant's use of plaintiff's mark in defendant's website's metatags was likely to cause confusion.[70] However, as distinguished by this Court in *1-800 Contacts*, the defendant in *Australian Gold* actually used the trademarks on the website.[71] As the use of the trademark was invisible in this case, it is easily distinguished from *Australian Gold*. Furthermore, the only effect that a metatag could have on search results is that it *might* make Lumicor's website appear among the results listed.[72] As this Court previously concluded in *1-800 Contacts*, the fact that a competitor's search results appear as one of many options when conducting a web search will not confuse customers, as they will have different appearances. As 3form's mark was not discernible to any potential customers, "there is no opportunity to confuse defendant's services, goods, advertisements, links or websites for those of its competitor."[73] The Court will therefore grant Lumicor's Motion for Summary Judgment against 3form and in favor of Lumicor on 3form's Thirteenth and Fourteenth Claims for Relief.

IV. MOTION FOR EXTENSION OF TIME TO COMPLETE EXPERT DISCOVERY

3form has filed a Motion for Extension of Time to Complete Expert Discovery, arguing that it was unable to depose all of Lumicor's experts prior to the close of expert discovery. The Motion was filed on September 24, 2011, which was before the close of expert discovery, and in

---

[69] 436 F.3d 1228 (10th Cir. 2006).

[70] *Id.* at 1239.

[71] *1-800 Contacts*, 755 F. Supp. 2d 1151 at 1172.

[72] Lumicor's expert has testified that the use of metatags would actually have no result, as (at least some) search engines disregard them entirely. Docket No. 80, at 33-34. 3form has provided no evidence that metatags do influence search results.

[73] *1-800 Contacts*, 755 F. Supp. 2d 1151 at 1173 (citation omitted).

it 3form argues that it was unable to depose all of Lumicor's experts due to issues coordinating with opposing counsel. The Court finds that there is good cause under Rule 6(b)(1)(A) to grant 3form's Motion. Therefore, the Court will grant Plaintiff's Motion. The parties are directed to make their experts available for depositions in the next fourteen days.

## V. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion for Partial Dismissal (Docket No. 55) is GRANTED IN PART and DENIED IN PART. It is further

ORDERED that Plaintiff's Motion for Leave to File a Surreply Memorandum in Further Opposition to Lumicor's Motion for Partial Dismissal (Docket No. 96) is DENIED AS MOOT. It is further

ORDERED that Plaintiff's Motion for Leave to File Evidence of New Transactions in Opposition to Lumicor's Motion for Partial Dismissal (Docket No. 128) is DENIED AS MOOT. It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 79) is GRANTED IN PART and DENIED IN PART. It is further

ORDERED that Plaintiff's Motion for Extension of Time to Complete Expert Discovery (Docket No. 100) is GRANTED. It is further

ORDERED that, as explained to counsel at oral argument, the parties are to confer and, within fourteen (14) days, schedule a settlement conference before Judge David Sam.

DATED   March 1, 2012.

                                         BY THE COURT:

                                         _____
                                         TED STEWART
                                         United States District Judge